# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | |
|---|---|
| **DESIREE WALLACE, et al.,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | Civil Action Number |
| **v.** ) | **5:18-cv-2009-AKK** |
| ) | |
| **VF JEANSWEAR LIMITED** ) | |
| **PARTNERSHIP and KONTOOR** ) | |
| **BRANDS, INC.,** ) | |
| ) | |
| **Defendants.** ) | |

## MEMORANDUM OPINION AND ORDER

Desiree Wallace and Angel Wallace bring this action against VF Jeanswear Limited Partnership and Kontoor Brands, Inc. (collectively, "VF") on behalf of themselves and a proposed class for alleged race and color discrimination in hiring practices. The plaintiffs assert that VF violates Title VII of the Civil Rights Act of 1964 and Section 1981 of the Civil Rights Act of 1866 by intentionally discriminating against non-white and non-Caucasian applicants and by maintaining facially-neutral hiring practices that have a disparate impact on non-white and non-Caucasian applicants and potential applicants. Doc. 36. VF has moved to dismiss, doc. 40, arguing that the plaintiffs' allegations and claims are contradictory and incompatible, that the plaintiffs do not allege the existence of a facially-neutral practice to support their disparate impact claims, and that the plaintiffs' allegations

establish that the proposed class is not ascertainable or certifiable. For the reasons explained below, VF's motion is due to be denied as to the individual claims, and is due to be granted as to the class claims. In lieu of dismissal, however, the court will afford the plaintiffs an opportunity to amend their pleadings regarding the proposed class definition.

I. **STANDARD OF REVIEW**

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Mere "'labels and conclusions'" or "'a formulaic recitation of the elements of a cause of action'" are insufficient. *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

Federal Rule of Civil Procedure 12(b)(6) permits dismissal when a complaint fails to state a claim upon which relief can be granted. When evaluating a motion brought under Rule 12(b)(6), the court accepts "the allegations in the complaint as true and construe[s] them in the light most favorable to the plaintiff." *Hunt v. Aimco*

*Props., L.P.*, 814 F.3d 1213, 1221 (11th Cir. 2016). However, "[t]o survive a motion to dismiss, a complaint must . . . 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). A complaint states a facially plausible claim for relief "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. In other words, the complaint must establish "more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Twombly*, 550 U.S. at 555. Ultimately, this inquiry is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

## II. RELEVANT FACTUAL AND PROCEDURAL BACKGROUND[1]

VF operates a distribution center in Marion County, Alabama and employs approximately 330 individuals in unskilled, non-exempt, non-clerical, and non-management positions in its production department.[2] Doc. 36 at 11, 13. Allegedly, the number of minorities in the unskilled positions consisted only of five or six African Americans and five or six Hispanic or Latino employees of color. *Id.* at 13. Thus, the plaintiffs contend that only 3 – 3.5% of the employees in unskilled

---

[1] The court recites the facts as alleged in the Second Amended Complaint. *See Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000) (citation omitted).

[2] The court will collectively refer to these positions as "unskilled positions."

3

positions were non-Caucasian people of color even though those individuals make up 4.80 – 32.00% of the potential workforce from the counties surrounding the center. *Id.* at 12-13, 15.

VF generally does not post vacancies within the distribution center. *Id.* at 15.[3] Instead, generally, to fill unskilled positions, VF informs employees by "word-of-mouth" that it is accepting applications. *Id.* Employees then notify friends and family members who may be interested, and the employees are also encouraged to provide recommendations for their friends and family who submit applications. *Id.* at 16. The earlier an individual applies, and the more recommendations he or she receives from current employees, the more likely it is that VF will hire that individual for an open position. *Id.* Allegedly, due to the center's employees being overwhelmingly white and Caucasian, "the potential candidates first learning from friends and family members of employment opportunities tend to be overwhelmingly [w]hite and Caucasian . . . ," and, therefore, VF's hiring practices result in a workforce that is disproportionately white and Caucasian. *Id.*

The plaintiffs each applied for positions in the production department after learning about open positions from a family member, Duran Wallace. *Id.* at 2, 12-14. Allegedly, Duran advised VF's hiring department about the plaintiffs'

---

[3] The plaintiffs allege that VF only advertises positions when it "need[s] to hire on mass to fill temporary positions within the distribution center during periods in which orders are abnormally high." Doc. 36 at 16.

4

applications and gave the plaintiffs positive recommendations. *Id.* at 14. Still, the plaintiffs, who were the only African American applicants and were qualified, were not selected. *Id.* at 14, 16-17. One of the plaintiffs, Angel Wallace, applied for a position at the center on two occasions and identified herself each time as African American. *Id.* at 18-19. When Angel called to inquire about the status of her application, a VF employee advised her on both occasions that the company had no open positions. *Id.* at 18-20. In spite of that representation, Angel received notices from an employment website, or saw on the internet, that VF had open positions available for which she was qualified. *Id.* at 19-20. Based on these allegations, the plaintiffs contend that race was a motivating factor in VF's decision not to hire them, *id.* at 20, and consequently filed this lawsuit.

### III. ANALYSIS

The plaintiffs assert claims on behalf of themselves and a proposed class of similarly-situated individuals for alleged violations of Title VII and § 1981. Doc. 36. Under these statutes, employers may be liable for race and color discrimination based on theories of disparate treatment and disparate impact. "[T]he two theories are not interchangeable, and 'courts must be careful to distinguish between them.'" *E.E.O.C. v. Catastrophe Mgmt. Solutions*, 852 F.3d 1018, 1024 (11th Cir. 2016) (quoting *Raytheon Co. v. Hernandez*, 540 U.S. 44, 53 (2003)) (alteration in original omitted). Disparate treatment claims involve allegations that an employer "'treats

5

some people less favorably than others because of their race, color, religion, sex, or [other protected characteristic].'" *Raytheon Co.*, 540 U.S. at 52 (quoting *Teamsters v. United States*, 431 U.S. 324, 335, n.15 (1977)) (alteration in original). "By contrast, disparate impact claims 'involve employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another and cannot be justified by business necessity.'" *Id.* Thus, "disparate treatment claims require proof of discriminatory intent; disparate impact claims do not." *E.E.O.C. v. Joe's Stone Crab, Inc.*, 220 F.3d 1263, 1273 (11th Cir. 2000) (citation and footnote omitted). Rather, "[a] disparate impact claim requires the identification of a specific, facially-neutral, employment practice causally responsible for an identified statistical disparity." *Id.* at 1268.

In this case, the plaintiffs assert individual disparate treatment claims (Count I), and claims on behalf of themselves and a proposed class for disparate treatment (Count III) and disparate impact (Count II). Doc. 36. VF argues that (1) the complaint is a shotgun pleading containing contradictory factual allegations and legal theories, (2) the plaintiffs do not allege a facially-neutral employment practice responsible for a statistical disparity in VF's workforce, and (3) the proposed class is not ascertainable or certifiable. Docs. 40; 41; 47. The court addresses these contentions in turn.

**A.**

VF argues first that the complaint is an impermissible shotgun pleading containing incompatible allegations and legal theories. Doc. 41 at 9-13. Shotgun pleadings include "complaint[s] containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before," complaints "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action," and those that do not separate each claim for relief into a different count. *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1321-23 (11th Cir. 2015) (citations omitted). None of those traits are present here, *see* doc. 36, and VF does not explicitly contend that it cannot discern the claims against it or prepare a responsive pleading. *See* docs. 41; 47. In fact, VF's arguments regarding the merits indicate that it is not confused about the basis of the claims against it. *See id.* Thus, because the allegations "are informative enough to permit a court to readily determine if they state a claim upon which relief can be granted," *Weiland*, 702 F.3d at 1326, the court declines to dismiss the complaint on the grounds that it is an impermissible shotgun pleading.

Relatedly, VF contends that the plaintiffs plead incompatible and contradictory allegations and claims of disparate treatment and disparate impact discrimination. *See* doc. 41 at 10-13. VF adds that the disparate impact and disparate treatment claims are mutually-exclusive and "diametrically opposed"

because a plaintiff must purportedly plead disparate impact claims based on a facially-neutral policy that results in an *unintentional* discriminatory impact on a protected class. *See* docs. 41 at 9-12; 47 at 3. These contentions are unavailing. To begin, the Federal Rules of Civil Procedure allow a plaintiff to plead in the alternative, and to "state as many separate claims [] as it has, regardless of consistency." Fed. R. Civ. P. 8(d)(3). And, courts have recognized that "[t]he same set of facts giving rise to a disparate treatment case can also be structured to make out a disparate impact case." *Wheeler v. City of Columbus*, 686 F.2d 1144, 1150 (5th Cir. 1982).[4] In other words, claims based on disparate impact and disparate treatment theories of discrimination are not mutually exclusive. And, VF does not cite any authority to support the contention that plaintiffs need to plead unintentional discrimination to support their disparate impact claim, and the court is aware of no such authority.[5] As a result, VF has not shown at this juncture that the complaint contains inherently contradictory allegations and claims.

---

[4] *See also Cobb County v. Bank of Am. Corp.*, 183 F. Supp. 3d 1332, n.17 (N.D. Ga. 2016) ("'[I]t is possible to bring both a disparate treatment and a disparate impact claim in the same litigation' if 'the claims are conceptually and factually distinct.'") (quotation omitted).

[5] The court notes that VF cites *Raytheon Co. v. Hernandez* to support its contentions. *See* doc. 41 at 9, n.5. VF is correct in part that the Supreme Court found that a plaintiff may prove disparate impact claims without evidence of an employer's subjective intent to discriminate. *See Raytheon Co.*, 540 U.S. at 52. However, the Court did not suggest that allegations or proof of discriminatory intent would negate a disparate impact claim. *Id.* at 52-53. *See also Griggs v. Duke Power*, 401 U.S. 424 (1971) (same); *Catastrophe Mgmt. Solutions*, 852 F.3d at 1024 ("A disparate impact claim targets an employment practice that has an actual, though not necessarily deliberate, adverse impact on protected groups.") (citing *Ricci v. DeStefano*, 557 U.S. 557, 577 (2009)). Thus, while a plaintiff must allege a facially-neutral policy to plead a plausible disparate impact claim,

**B.**

VF contends also that the plaintiffs fail to plead a plausible disparate impact claim. To state a plausible claim, a plaintiff must plead facts showing: "(1) the existence of a statistically significant disparity among members of different groups affected by employment decisions; (2) the existence of a specific, facially neutral employment practice; (3) a causal nexus between the specific, facially neutral employment practice and the statistical disparity." *Bryant v. Johnny Kynard Logging, Inc.*, 930 F. Supp. 2d 1272, 1297 (N.D. Ala. 2013). VF challenges the second and third prongs, contending that the plaintiffs allege only intentional discrimination and do not plausibly allege the existence of a facially-neutral employment practice that is responsible for the alleged statistical disparity between VF's workforce and the pool of potential applicants. Doc. 41 at 13-17; 47 at 2. Indeed, "disparate impact theory is available for the challenge of *facially-neutral* employment practices." *Joe's Stone Crab, Inc.*, 220 F.3d at 1278 (emphasis in original). But, contrary to VF's contention, in addition to alleging that VF purportedly engages in overt, facially-discriminatory practices, the plaintiffs contend also that VF utilizes facially-neutral practices in its hiring process. Allegedly, VF (1) relies on "word-of-mouth" to let current employees know that it

---

discrimination based on a facially-neutral policy is not necessarily synonymous with unintentional discrimination.

is accepting applications; (2) relies on current VF employees to notify friends and family about the open positions and to provide recommendations for their friends and family members who submit applications; and (3) favors applicants who apply early and receive multiple recommendations from current employees. Doc. 36 at 16, 23.

Allegedly, these facially-neutral practices prevent "non-White, non-Caucasian people from competing for employment opportunities equally" because the distribution center's workforce is "overwhelmingly White and Caucasian" and "as such, the potential candidates first learning from friends and family members of employment opportunities [at the center] tend to be overwhelmingly White and Caucasian . . . ." Doc. 36 at 22. The plaintiffs further allege that VF's facially-neutral hiring practices "have the effect of denying non-White, non-Caucasian applicants hiring opportunities," despite "the [racial] demographics of the counties from which [VF] normally hire[s] candidates." Doc. 36 at 21-22. Whether the plaintiffs can prove their disparate impact claims is a matter for another day, but at this juncture, the allegations are sufficient to plead a plausible disparate impact claim.[6]

---

[6] *See Joe's Stone Crab, Inc.*, 220 F.3d at 1279 (recognizing that a causal connection may exist to support a disparate impact claim when a facially-neutral hiring practice keeps women from learning about available jobs); *United States v. Georgia Power Co.*, 474 F.2d 906, 925 (5th Cir. 1973); *Bryant v. Johnny Kynard Logging, Inc.*, 930 F. Supp. 2d at 1297.

## C.

Finally, VF contends that the proposed class is not ascertainable or certifiable. Doc. 41 at 17-21. Plaintiffs "seeking to maintain a class action under Title VII [and § 1981] must meet 'the prerequisites of numerosity, commonality, typicality, and adequacy of representation' specified in Rule 23(a)." *Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 156 (1982) (citations omitted). In addition, "'[a]lthough not explicit in Rule 23(a) or (b), courts have universally recognized that the first essential ingredient to class treatment is the ascertainability of the class.'" *Grimes v. Rave Motion Pictures Birmingham, L.L.C.*, 264 F.R.D. 659, 663 (N.D. Ala. 2010) (citations omitted). "Ascertainability depends on the class definition," *Moore v. Walter Coke, Inc.*, 294 F.R.D. 620, 624 (N.D. Ala. 2013), and "means that the description of the class 'must be sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member of the proposed class," *Adair v. Johnston*, 221 F.R.D. 573, 577 (M.D. Ala. 2010) (citing 5 James Wm. Moore, et al., *Moore's Federal Practice* § 23.21[1]). "Where it is facially apparent from the pleadings that there is no ascertainable class, a district court may dismiss the class allegation on the pleadings." *John v. Nat'l Sec. Fire & Cas. C*o., 501 F.3d 443, 445 (5th Cir. 2007). But, "[o]utside of inherently subjective and indeterminate class definitions, striking a class claim before a motion for

certification (and before the benefit of pre-certification discovery) is rare." *Moore*, 294 F.R.D. at 627.

The plaintiffs here assert disparate impact and disparate treatment claims on behalf of a proposed class defined as:

> [A]ll non-Caucasian [and non-white] applicants and potential applicants for employment with VF . . . , as non-exempt (FLSA), non-management, and non-clerical workers on the floor of the Hackleburg distribution center . . . .

Doc. 36 at 3-4. VF contends that this class is not ascertainable. To support this contention, VF argues in part that the plaintiffs fail to precisely identify the class members who are potential applicants for employment, and that these putative class members cannot be identified without highly-individualized inquiries. Doc. 41 at 18. Indeed, class certification is not appropriate if the court must engage in "individualized inquiry into the merits of each putative class member's claims" to ascertain whether an individual is a member of the class. *Grimes*, 264 F.R.D. at 665 (citations omitted). Nevertheless, VF's arguments are premature. To begin, when "courts have dismissed a plaintiff's complaint on the pleadings (i.e., before a motion for certification has been filed or any preliminary discovery has taken place) based on ascertainability, the class definitions have been intrinsically indefinite." *Moore*, 294 F.R.D. at 626. Here, however, VF has not shown that a class containing potential applicants for employment is intrinsically indefinite. In fact, the former Fifth Circuit reversed a district court for dismissing claims filed on behalf of a class

defined as "all who write for, publish, sell or distribute the Kudzu, [a newspaper in Jackson, Mississippi], *or who wish or expect to do so in the future*." *Carpenter v. Davis*, 424 F.2d 257, 260 (5th Cir. 1970) (emphasis added). In reaching that holding, the Court found in relevant part that "[i]t is not necessary that the members of the class be so clearly identified that any member can be presently ascertained." *Id.* Based on this binding precedent,[7] the inclusion of potential applicants for employment in the proposed class definition does not render the class intrinsically indefinite or unascertainable on its face.

VF contends also that the class cannot satisfy the commonality, typicality, and numerosity requirements of Rule 23. *See* doc. 41 at 18-21. This contention is also unavailing because none of the cases VF cites were decided at the motion to dismiss stage. *See id.* at 19-21. And, "[a]s long as the class allegations make it plausible that discovery will lead to facts that would justify certifying a class action, the court will not dismiss the class claims." *Faught v. Am. Home Shield Corp.*, Case No. 2:07-cv-1928-RDP, 2007 WL 9657811, at *1 (N.D. Ala. Dec. 20, 2007). In this case, the plaintiffs plead that VF discriminated against them and other non-Caucasian applicants for employment based on their race or by utilizing hiring practices that led to a significant disparity between the racial composition of VF's work-force and

---

[7] *See Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. 1981) (adopting as binding precedent decisions of the former Fifth Circuit issued prior to October 1, 1981).

13

the counties from which VF normally hires its employees for the distribution center. *See* doc. 36; pp. 3-4, 10-11, *supra*. These allegations are sufficient to plausibly show that discovery *could* lead to facts that *may* justify certifying a class.

Still, VF raises a valid argument that the class is impermissibly broad and amorphous based on the plaintiffs' failure to limit the temporal scope of the class and the difficulty in locating potential applicants. Doc. 41 at 18. Indeed, the complaint contains no temporal or geographic limitation. *See* doc. 36 at 3-4. Thus, the class could include all non-white and non-Caucasian applicants and potential applicants beginning from the date the distribution center opened, and potential members of the putative class may be located wherever employees have friends and family or wherever information regarding open positions could reach. Consequently, because the proposed class is not limited temporally or geographically, the class as presently defined is not ascertainable, and the plaintiffs' class claims are due to be dismissed.[8]

## IV. CONCLUSION AND ORDER

Based on the foregoing, VF's motion to dismiss, doc. 40, is **DENIED** as to the individual claims. However, because the class cannot be ascertained as it is

---

[8] *See John*, 501 F.3d at 445; *Moore v. Walter Coke, Inc.*, 2:11-cv-1391-SLB, 2012 WL 4731255, at *14-15 (N.D. Ala. Sept. 28, 2012) (dismissing class claims for failure to plead an ascertainable class when "the class is so open-ended that it could potentially include any property owner anywhere depending on how far the alleged emissions and groundwater migrations traveled").

currently defined, the motion is **GRANTED** as to the class claims. Finally, because the plaintiffs have requested an opportunity to amend, doc. 46 at 32, and the court must give leave to amend "when justice so requires," Fed. R. Civ. P. 15(a)(2), in lieu of dismissing the class claims, the plaintiffs have until **March 13, 2020** to file an amended complaint that addresses the temporal and geographic deficiencies of the proposed class. A failure to file an amended complaint by the deadline will result in the dismissal of the class claims.

    **DONE** the 2nd day of March, 2020.

*[signature: Abdul Kallon]*
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE